576 A.2d 1172

**Edmund L. GOLDSBOROUGH, Maxwell Levinson, Elizabeth McManus and Inez Scheerle, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION and Lower Merion School District, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1990.

Decided June 18, 1990.

Reargument Denied August 3, 1990.

Alan F. Candor, Narberth, for petitioners.

Gregory Dunlap, Deputy Gen. Counsel, with him, Ernest N. Helling, Asst. Chief Counsel, for respondent, Department of Educ.

Charles Potash, Wisler, Pearstine, Talone, Craig & Garrity, Norristown, for respondent, Lower Merion School Dist.

Katherine L. Niven, York Springs, for amicus curiae, Pennsylvania Historical and Museum Com'n.

Before CRAIG and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

The Petitioners, Edmund L. Goldsborough, Maxwell Levinson, Elizabeth McManus and Inez Scheerle (Residents) have filed a Petition for Review of an Order of the Pennsylvania Department of Education (Department) dismissing Petitioners' appeal of the Department's approval of an

application of the Lower Merion School District (School District) to demolish the Ardmore Junior High School Building (School Building) in Ardmore, Montgomery County, Pennsylvania.

On May 15, 1989, the School District filed an Application for Approval with the Department under Section 731 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–731, of its plan to demolish and reconstruct portions of the School Building (the plan). The Residents, filing a Response in Opposition with the Department, requested a hearing on the School District's application contending that the plan required, in addition to compliance with the Department's procedures, review and approval under Section 508 of the History Code, 37 Pa. C.S. § 508.

Subsequently, in response to a request from the Director of the Bureau of Historical Preservation of the Historical and Museum Commission (Commission), the School District provided the Commission with information about the plan. After reviewing the School District's information, the Commission, in a July 10, 1989 letter, advised the School District that in its opinion, the proposed demolition of the School Building would have an adverse effect on an historical property in Pennsylvania, and recommended that the School District consider alternatives to demolition. Despite the Commission's recommendations,[1] the School District confirmed its earlier adoption of the plan and transmitted it to the Department.

The Residents also sought to intervene in the application pursuant to Section 35.27 of the Administrative Rules of Procedure, 1 Pa.Code § 35.27. The Residents also filed a Petition for Hearing contending that the approval of the plan under Section 731 of the School Code constitutes an

**1.** The recommendations made in the Commission's July 10, 1989 letter to the District were substantially similar to the alternative proposals for use of the School Building that the District considered from 1980 until the adoption of the plan in 1989. (Brief of Respondent School District pp. 4–10, Exhibits 1–24, 29).

adjudication requiring notice and a hearing under Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, and under 22 Pa.Code § 21.71(3).

The Department approved the School District's Application for Approval, granted the Residents' Petition to Intervene for the limited purpose of post-determination proceedings, and denied the Residents' Petition for Hearing without prejudice to request a hearing in conjunction with such post-determination proceedings. On August 2, 1989, pursuant to Section 35.20 of the Administrative Rules of Procedure, 1 Pa.Code § 35.20, the Residents appealed all three decisions to the Secretary of Education (Secretary).

On September 25, 1989, the Department, through the Secretary, dismissed the Residents' Petition of Appeal because the Department neither owns nor controls the School Building and thus is not subject to the provisions of the History Code. The Residents then filed the instant Petition for Review appealing this Order of the Department.

Before this Court, the Residents contend that the Department violated their right to due process by failing to grant them intervenor status in the underlying proceedings. The Residents also assert that the Department and School District's failure to act in accordance with applicable law has resulted in the denial of the Residents' constitutional and statutory right to the preservation of historical resources. Finally, the Residents contend that the Department violated its regulations by failing to provide written comment to the School District and failing to require a public hearing prior to final approval.[2]

The Residents assert their right to intervene by virtue of their constitutional and statutory rights under Section 27 of Article I of the Pennsylvania Constitution, Article I, § 27

---

2. The standard of review is whether the Secretary's Order contains a constitutional violation or an error of law, and whether or not the necessary findings of fact are supported by substantial evidence on the record. 2 Pa.C.S. § 704, *Botti v. South West Butler County School District*, 108 Pa.Commonwealth Ct. 538, 529 A.2d 1206 (1987).

and Section 512 of the History Code, 37 Pa.C.S. § 512.[3] For this intervention to be permitted, they must have a legally enforceable interest in a process that results in an adjudication. 1 Pa.Code § 35.28.

Central to this issue of whether they have a legally enforceable interest is whether the Department or School District are required to comply with Section 508 of the History Code, 37 Pa.C.S. § 508, either because the Department "controls" the School Building in question or because the School District is a "Commonwealth agency." If the Department does not "control" and the School District is not a "Commonwealth agency," no legally enforceable interest exists under the review process for a challenge to the demolition of the School Building under the School Code.

Section 508 of the History Code provides in relevant part that:

*Commonwealth Agencies* shall:

(1) Consult the [Pennsylvania Historical and Museum Commission] before *demolishing, altering or transferring any property under their ownership or control* that is or may be of historical, architectural or archaeological significance.

**3.** Section 27 of Article I of the Pennsylvania Constitution establishes for the citizens of the Commonwealth the following environmental rights:

§ 27. Natural resources and the public estate

The people have a right to clean air, pure water, and the preservation of the natural, scenic, *historic* and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As the trustee for these resources, the Commonwealth shall preserve and maintain them for the benefit of all the people. (Emphasis added.)

Const. Art. I, § 27

Section 512 of the History Code provides for the enforcement of historic preservation laws and policies as follows:

The Attorney General, the [Pennsylvania Historical and Museum Commission of the Commonwealth], any political subdivision, person or other legal entity may maintain an action in an administrative tribunal or court for the protection or preservation of any historical resource in this Commonwealth.

37 Pa.C.S. § 512.

(2) Seek the advice of the commission on possible alternatives to the *demolition, alteration or transfer of property under their ownership or control* that is or may be eligible for the Pennsylvania Register of Historic Places.

(3) Initiate measures and procedures to provide for the maintenance by means of *preservation, rehabilitation or restoration of historic resources under their ownership or control* that are listed on or are eligible for the Pennsylvania Register of Historic Places.

37 Pa.C.S. § 508(1), (2) and (3).

■ There is no dispute that the Department is a Commonwealth agency; that the Commission has determined that the School Building is eligible for inclusion on the Pennsylvania Register of Historic Places, (R.R. 80a–81a, 209a–216a; Supp.R. 1b–5b); or that the Department does not own the School Building. However, the Residents contend Section 508(1), (2) and (3) apply because the School Building property is under the "control" of the Department.

The interpretation of the word "control" under this section of the History Code must be determined according to its "common and approved usage," and shall "be construed to take [its] meanings and be restricted by proceeding particular words." Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903.

In the present context, the word "control" means the direct and substantial control over a particular piece of property. "Control" in the context of the statute implies the physical ability to manage and direct the day to day operations of the property. "Control" is the ability to make use of the properties facilities for the agencies own needs. It is akin to the powers exercised by an owner of a property, but without actual ownership, such as that involved in a lease or license arrangement.

Recently in *Kline v. Pennsylvania Mines Corporation*, 120 Pa.Commonwealth Ct. 7, 547 A.2d 1276 (1988), we held that inspection and regulatory enforcement of mines by the

Department of Environmental Resources does not constitute "control" of a mine so as to make the Department subject to a suit under the exception to the sovereign immunity doctrine when the State has care, custody or control of personal property. *Id.* We believe the same rationale applies here.

The fact that the Department has the power to regulate and oversee the numerous school district's throughout the Commonwealth does not automatically give the Department "control" over all the properties owned by the school districts. The Department clearly does not own the School Building in question. It also does not exert any direct control over the School Building. The Department does not manage the day to day operations of the property, nor does it have the right to use any of the facilities for its own use, nor would it be liable for any injury occurring during activities that take place at the School Building. The Department possesses none of the powers to which an owner or lessor of the property would be entitled.

Because the Department does not "control" the School Building, we conclude that the Department does not have to comply with Section 508 of the History Code as applied to the School Building in question.

██ Next, we must determine whether the School District, which owns and controls the School Building, must comply with this section. To determine whether the School District must comply, we must determine whether it is a "Commonwealth agency" as used in Section 508.

The courts of this Commonwealth have described school districts differently depending on the context of the particular legislation. When referring to the function of carrying out the state's educational purpose, it has been defined as an agency of the Commonwealth or a quasi-municipal corporation created by the Commonwealth for the sole purpose of administering the Commonwealth's system of public education. *Borough of Wilkinsburg v. School District of Wilkinsburg,* 365 Pa. 254, 74 A.2d 138 (1950); *Penn–Delco*

*School District v. Schukraft,* 95 Pa.Commonwealth Ct. 619, 506 A.2d 956 (1986), *petition for allowance of appeal denied,* 514 Pa. 644, 523 A.2d 1133 (1987). This language is similar to that used to describe Counties when they perform state functions. *See, e.g., Chester County v. Philadelphia Electric Co.,* 420 Pa. 422, 218 A.2d 331 (1966).

However, when describing their form, the General Assembly and the courts have considered them to be "local agencies" or "political subdivisions" and not "Commonwealth agencies." Under the Judicial Code, a school district is defined as a "local agency" for the purposes of governmental immunity. 42 Pa.C.S. §§ 8521, 8541.[4] *See Wilson v. Milandin,* 123 Pa.Commonwealth Ct. 405, 553 A.2d 535 (1989); *Houston by Houston v. Central Bucks County School Authority,* 119 Pa.Commonwealth 48, 546 A.2d 1286 (1988). More importantly, because it governs the interpretation of all statutes unless the statute contains another definition, Section 1991 of the Statutory Construction Act defines a school district as a "Political Subdivision." 1 Pa.C.S. § 1991.[5]

This treatment of school districts as local agencies is evident by the language the General Assembly used in other sections of the History Code to illustrate that school districts were not considered "Commonwealth agencies" within the meaning of Section 508 of the History Code.

Section 507 of the History Code provides that "[c]ommonwealth agencies and political subdivisions shall cooperate fully with the commission in the preservation, protection and investigation of archaeological resources." 37 Pa.C.S. § 507(a). However, the next section, 508, names only

---

**4.** Section 8521 of the Judicial Code refers to Sovereign Immunity, which applies only to Commonwealth agencies. Section 8541 refers to Governmental Immunity and applies only to local agencies. 42 Pa.C.S. §§ 8521, 8541.

**5.** The Statutory Construction Act provides in its definitions;
*Political subdivision:*
Any county, city, borough, incorporated town, township, *school district,* vocational school district and county institution district. (Emphasis added.)
1 Pa.C.S. § 1991.

"Commonwealth agencies" and conspicuously leaves out "Political Subdivisions." Since it is the intent of the legislature to give effect to every word contained in a statute, the purposeful inclusion of the term "Political Subdivision" in Section 507 and clear omission of the term from Section 508, clearly evidences the legislature's intent to exclude school districts from the provisions of Section 508. *Expressio unius est exclusio alterius.* Therefore, we conclude that the School District is not a "Commonwealth agency" and does not have to abide by the provisions of Section 508 of the History Code.

Finally, the Residents contend that the final approval of the plan is an adjudication and therefore a public hearing is required under 22 Pa.Code §§ 21.71 and 21.82,[6] and Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504.[7]

6. Section 21.81 of the Title 22 of the Pennsylvania Code provides in part:

> The Department will approve *final plans* when the plans conform to the requirements of *§ 21.71 (relating to plans),* standards as prepared by the Department, and the requirements of other departments and agencies, including the provisions of the act of September 1, 1965 (P.L. 459, No. 240) (71 P.S. §§ 1455.1–1455.3a), relating to grounds, buildings, and facilities.... (Emphasis added.)

22 Pa.Code § 21.81.

Section 21.71, relating to plans, provides in part:

(a) The Department will provided *written comment* to the board of school directors on a district's preliminary plans. Department approval of preliminary plans is contingent upon the following:

· · · · ·

> (3) A *written response by the board of school directors to the Department's comments on the plan,* including documentation that the comments of the Department have been discussed at a *public meeting* before the local board of school directors and that the public has been given an opportunity to comment. The public meeting shall be advertised in the same manner as a regular local board of school directors meeting. The board's written response shall include a complete summary of public comments on the project. (Emphasis added.)

22 Pa.Code § 21.71(a)(3).

7. Section 504 of the Administrative Agency Law provides that:

> No *adjudication* of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable *notice of a hearing and an opportunity to be heard.* All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings. (Emphasis added.)

2 Pa.C.S. § 504.

In light of our conclusion that neither the Department nor the School District must consider the dictates of Section 508 of the History Code before approval of their plan in this case, we need not address the issue of whether the final approval was an adjudication or whether a hearing is necessary.

Therefore, in light of the foregoing discussion, we conclude that the Department has not committed an error of law and has not violated a constitutional provision.

Accordingly, the Order of the Department of Education will be affirmed.

## ORDER

AND NOW, this 18th day of June, 1990, the Order of the Department of Education dated September 25, 1989 is affirmed.

CRUMLISH, Jr., former President Judge, did not participate in the decision in this case.