# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Batgos,                 :
             Appellant      :
                               :
            v.               :    No. 1203 C.D. 2021
                               :    Submitted: October 28, 2022
Elliot Calloway, Sr.,         :
Richard Gusick and Amy Meisinger   :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge[1]
                  **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                  **HONORABLE STACY WALLACE,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: March 15, 2024**

Thomas Batgos (Batgos) appeals from the April 12, 2021 Order of the Chester County Court of Common Pleas (common pleas)[2] granting the oral "[R]enewed []Motion for Summary Judgment" (Renewed Motion) of Richard Gusick (Gusick) and Amy Meisinger (Meisinger) (together, Appellees),[3] and entering judgment in favor of Appellees and against Batgos. (Common pleas' Order.) Common pleas held that Appellees were high public officials and entitled to the common law privilege of absolute immunity from Batgos's claims. Upon review, we affirm in part, vacate in part, and remand for further proceedings.

---

[1] This case was reassigned to the author on April 25, 2023.

[2] Batgos initially appealed common pleas' Order to the Superior Court, which transferred the appeal to this Court.

[3] The third person named in the caption of Batgos's complaint, Elliot Calloway, Sr. (Calloway), was never served with either the writ of summons commencing the action or the subsequent complaint filed by Batgos, nor was the writ reissued or the complaint reinstated against Calloway. Accordingly, as Batgos concedes, Calloway was never made a party to the action, which proceeded only against Gusick and Meisinger. (*See* Batgos's Brief (Br.) at 8.)

## I. BACKGROUND

Gusick is the superintendent of Tredyffrin-Easttown School District (School District). Meisinger is the principal of Conestoga High School (High School) in the School District. Batgos is a former assistant varsity football coach at the High School.

In the fall of 2015, alleged incidents of hazing occurred in the High School locker room that led to a criminal investigation and resulted in criminal charges against several senior members of the High School football team. (*See* Reproduced Record (R.R.) at 51a-52a, 294a-300a.) The alleged incidents occurred prior to football practice when no coach was present in the locker room. (*Id.* at 530a, 533a.) In a televised press conference on March 4, 2016, the Chester County District Attorney (District Attorney) decried what he called "a shocking lack of supervision" on the part of the coaching staff, elaborating that "[t]he lack of supervision here is the fact that all of this happened under the noses of the coaching staff because they were not there to supervise." (*Id.* at 213a, 218a (quoting from televised press statement) (emphasis omitted).[4])

The School District also conducted its own internal investigation into the hazing allegations. On March 17, 2016, a letter signed by Appellees (Letter) was emailed to all parents of High School students and posted on the School District's blog, providing information on the School District's investigation of the alleged hazing incidents. (R.R. at 73a-74a.) The Letter stated, in pertinent part, that "[t]he

---

[4] As cited by Appellees in their brief, the televised press statement can be viewed online at https://6abc.com/education/da-3-conestoga-football-players-charged-for-assualt-with-broomstick /1230847/ (last visited March 14, 2024). On the day the three students were to go on trial, they pled guilty to a summary offense of harassment, and, via a joint statement by the defense attorneys and the District Attorney, it was revealed that the student victim did not suffer any physical injuries and that the most severe claim of harassment did not happen. (R.R. at 57a-58a.)

2

locker rooms had an insufficient adult presence throughout the football season, creating an environment where hazing activities could occur" and that "[t]he entire varsity and junior varsity football staff has . . . been relieved of all coaching responsibilities in all sports through the fall season." (*Id.* at 74a.) The Letter was subsequently republished by a local news organization and on the internet. (*Id.* at 53a, 58a.)

In March 2017, Batgos commenced a civil action against Appellees in common pleas. Therein, Batgos alleged fraud, negligent misrepresentation, defamation, and false light invasion of privacy based on the School District's dissemination of the Letter.[5] (*Id.* at 44a-70a.) Batgos contended that, as a result of Appellees' Letter, he has applied for, but failed to obtain, employment as a high school football coach. (*Id.* at 57a.) Batgos demanded a jury trial. Appellees filed an Answer and New Matter to the complaint, denying the material allegations and asserting that Appellees had no individual liability for their actions and were entitled to high public official immunity from the claims for their official actions.[6] (*Id.* at 78a, 86a-88a, 101a, 103a-04a.)

Discovery ensued, after which Appellees filed a Motion for Summary Judgment (Original Motion), in which they asserted absolute immunity as high public officials, immunity as employees of a local agency (the School District) under Section 8541 of the law commonly known as the Political Subdivision Tort Claims

---

[5] The complaint also included a count averring a claim of tortious interference with business relations against Calloway.

[6] Appellees initially filed preliminary objections asserting, among other objections, that they were immune from suit as a defense, but common pleas overruled these preliminary objections because it could not "say that it [was] clear from the face of the . . . [c]omplaint that immunity applies." (R.R. at 113a, 116a.)

Act (PSTCA), 42 Pa.C.S. § 8541,[7] and the failure of Batgos to produce evidence to support each element of his claims. (R.R. at 208a-28a.) Common pleas denied the Original Motion on April 26, 2019, because "[t]he parties have vastly differing views of the discovery produced in this action" and, in its opinion, "there [were] genuine issues of material fact as to [Batgos's] causes of action." (*Id.* at 117a-18a.) On April 8, 2021, common pleas scheduled a "hearing pursuant to [Pennsylvania Rule of Evidence 104(a),] Pa.R.E[.] 104(a)[,[8]] to determine the existence of a high public officials privilege in relation to . . . Meisinger[,]" who was "ordered to appear . . . and [] be prepared to give testimony concerning her position as principal of [the] High School, including (a) the nature of her duties, (b) the importance of her office, and (c) whether she ha[d] policy making functions." (R.R. at 119a-20a.) Common pleas ordered briefing on this issue, which was provided. (*Id.* at 121a-63a.) No objection to the scheduled hearing was made in the parties' briefs or at the hearing itself. (*See id.* at 121a-63a, 166a-206a.)

At the hearing, Meisinger testified about her educational background and knowledge of the School District's policies and regulations, which are "ultimately approved by the [School] Board," but she noted principals were a part of the process of creating and enforcing those policies. (*Id.* at 184a-86a, 190a-93a.) She works collaboratively with Gusick and is responsible for the High School's budget, as well

---

[7] Section 8541 provides that generally, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. A school district is a local agency for purposes of immunity under Section 8541. *Goldsborough v. Dep't of Educ.*, 576 A.2d 1172, 1175 (Pa. Cmwlth. 1990).

[8] Pennsylvania Rule of Evidence 104 is titled "Preliminary Questions" and subsection (a) states: "**In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Pa.R.E. 104(a).

4

as the "[m]anagement of the [High S]chool, district programs, curricular, extracurricular activities. All of the things to support the district programs." (*Id.* at 186a-87a, 189a.) Meisinger also is in charge of safety and has "authority over all people on the [H]igh [S]chool property . . . [and] direct[s] or evaluate[s] all personnel associated with . . . [the] High School," including coaches. (*Id.* at 186a-88a.) She is the liaison with the community, which often means communicating with the public about what is happening with the High School. (*Id.* at 187a.)

On cross-examination, Meisinger agreed that the policies and regulations related to principals' duties were drafted and revised by someone else and were adopted prior to her working for the School District, and she had the duty to execute those policies and regulations. (*Id.* at 194a.) She acknowledged that all principals and administrators in the School District must follow those policies, but there are some, "relating to students and instruction in particular, [that she was] involved in drafting," which everyone must follow. (*Id.* at 195a-96a.) Meisinger agreed she was not elected to her position but appointed, she is "not like the School Board," and she is a salaried employee of the School District who is subject to annual evaluation by Gusick. (*Id.* at 196a-97a.) On the topic of the Letter, Meisinger stated that "[b]y law, [she and Gusick] were not required to send it," but

> felt as though our community needed to hear from us after the [D]istrict [A]ttorney had made the statements that he did. Our community was waiting to hear from us. They [sic] knew the [D]istrict [A]ttorney was investigating the criminal side, and that we needed to investigate the school rules that were broken and how we were going to handle it as a school community and that's why we thought it was in our best interest of our community to say, here's the status of what's going on.

(*Id.* at 196a-98a.) She disagreed that they "sent [the Letter] to the world," but agreed that "anyone in the world had access to th[e] information . . . posted." (*Id.* at 198a.)

5

Meisinger indicated she was required by the student discipline policy to investigate and acknowledged that the investigation was not complete when they sent and posted the Letter, but stated no additional information came in after the Letter was sent. (*Id.* at 198a-99a.) Meisinger agreed she was aware a week before they sent the Letter that "two witnesses . . . said there was an audiovisual tape of [the victim] . . . recanting that allegation," but clarified that the investigation involved not only the particular incident, but also the allegations of hazing in general, which were confirmed by their investigation. (*Id.* at 199a-200a.)

Upon questioning by common pleas, Meisinger agreed that information about school events is posted on the internet to communicate with the larger public on a daily or weekly basis. (*Id.* at 201a.) She indicated most communication is now electronic, whether through email directly to the students' families or posting it online. (*Id.* at 201a-02a.) Meisinger stated she was working in her official capacity when she sent the Letter and was not motivated by any personal or private concern. (*Id.* at 203a.)

At the conclusion of the hearing, common pleas advised that it had "already decided in [its] mind at least," that Gusick was a high public official entitled to absolute immunity. (*Id.* at 204a.) Common pleas then determined that Meisinger also was entitled to the "absolute privilege" of being a high public official and the immunity that accompanies that privilege. (*Id.*) Common pleas discussed with counsel, off the record, "where [they] go from [t]here procedurally," given its determination. (*Id.*) Following the discussion off the record, Batgos's counsel indicated he was ready to proceed "with the Court's ruling," and both he and Appellees' counsel agreed to proceed with the "expedited procedure" common pleas had discussed. (*Id.* at 204a-05a.) Appellees' counsel verbally renewed the Original

6

Motion, now the Renewed Motion, "on the grounds of immunity," which common pleas granted. (*Id.* at 205a.) Batgos's counsel stated he believed common pleas' "ruling is incorrect and that in addition to everything that was filed before as to the summary judgment, [he] would ask [common pleas] to include the various case law that has been presented to [his] Honor." (*Id.*) Common pleas then stated:

> I will enter the summary judgment on the record and I believe that puts [Batgos] in good stead to go from there with an appeal. I do understand that [Batgos is] not conceding the correctness of my ruling.

(*Id.* at 206a.) Its Order stated:

### JUDGMENT

> **AND NOW**, this 12th day of April, 2021, after hearing held pursuant to Pa. R.[E.] 104(a), the court determines that . . . Meisinger . . . is a high public official and as such is entitled to the common law privilege of absolute immunity.[1]
>
> At the conclusion of the hearing, and **pursuant to the procedure set out in *Rivera v. Home Depot USA, Inc.*, 832 A.2d 487 (Pa. Super. 2003), [Appellees] renewed their Motion for Summary Judgment, *nunc pro tunc*.** [Batgos] was opposed on the merits, but agreed with this procedure. The court granted the [R]enewed [M]otion.
>
> *Accordingly, judgement [sic] is entered in favor of . . . Gusick and [] Meisinger, against . . . Batgos, in no amount, on all claims in [Batgos's] [] Complaint.*
>
> > FN1 The court also ruled that . . . Gusick . . . is necessarily a high public official as a matter of law, given the identity of salient facts with . . . Meisinger, and relevant case law.

(*Id.* at 11a (italicized emphasis in original).)

Batgos appealed and filed, at common pleas' direction, a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), Pa.R.A.P. 1925(b). (*Id.* at 29a-31a.) Batgos asserted

7

common pleas erred in: finding that Meisinger was a high public official; not analyzing whether Gusick was acting in the scope of his duties as a high public official in sending the Letter; and entering, *sua sponte*, judgment in favor of Appellees after having previously rejected the high public official argument when it denied the Original Motion. (*Id.* at 29a-30a.) Common pleas issued a Rule 1925(a) opinion explaining that, prior to jury selection, it issued an order pursuant to Rule of Evidence "104(a) to determine the existence of a high public official's privilege in relation to . . . Meisinger." (*Id.* at 35a-36a.) On the merits of its conclusions that Appellees were entitled to the privilege of a high public official and associated immunity, common pleas explained the privilege of high public official is an absolute one, exempts the official from civil suits for damages arising out of false defamatory statements if such statements are made in the course of the official's duties or powers, and is to benefit the public, rather than the particular high public official. (*Id.* at 36a (citing *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952), *overruled on other grounds by Commonwealth v. Schab*, 388 A.2d 819 (Pa. 1978); *Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996)).) Such officials, common pleas held, "have the right to be wrong" and "the right not to go to trial." (*Id.* at 37a.) Common pleas concluded the evidence "clearly demonstrated that . . . Meisinger's challenged actions met the requirements for immunity" and that, for Gusick, "case law demonstrates that a school superintendent has been determined to be a high public official entitled to absolute immunity." (*Id.* at 38a-39a (citing *Matta v. Burton*, 721 A.2d 1164 (Pa. Cmwlth. 1998); *Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 562 (E.D. Pa. 2013); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000)).[9]) Finally, common pleas held that Section 8550 of the PSTCA, removing

---

[9] While Pennsylvania courts are not bound by the decisions of the lower federal courts, those decisions can be found to be persuasive. *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

8

immunity for local agency employees who engage in, *inter alia*, willful misconduct, 42 Pa.C.S. § 8550, "did not abrogate the absolute privilege afforded high public officials" but "addresses rather those employees of local agencies who do not fall within the category of high public official." (*Id.* at 39a (citing *Factor v. Goode*, 612 A.2d 591, 592 (Pa. Cmwlth. 1992)).)

## II. PARTIES' ARGUMENTS

Batgos asserts two issues on appeal.[10]  Batgos argues common pleas erroneously concluded that Gusick was entitled to absolute immunity without analyzing whether Gusick was acting within the scope and authority of his duties as a high public official.  Batgos concedes that Gusick is a high public official, (*see* Batgos's Brief (Br.) at 26), but contends that Gusick was not acting within the scope and authority of his duties as a high public official and, therefore, is not entitled to that immunity.  Batgos also contends common pleas erred in concluding that Meisinger is a high public official because the evidence, Meisinger's testimony, does not support this conclusion and common pleas' determination is contrary to precedent that has analyzed principals as local agency employees, not as high public officials.  (*Id.* at 19-20 (citing, e.g., *Keeler v. Everett Area Sch. Dist.*, 533 A.2d 836, 837 (Pa. Cmwlth. 1987)).)  Because the claims against Meisinger fall within the exception to governmental immunity set forth in Section 8550 of the PSTCA, Batgos asserts those claims should have been permitted to proceed against Meisinger.  For these reasons, Batgos argues common pleas' Order should be reversed and the matter remanded for further proceedings.

Appellees argue common pleas did not abuse its discretion or commit an error of law in finding that they were high public officials acting within the authority and

---

[10] We have rearranged the order of Batgos's arguments for ease of discussion.

9

scope of their duties when they engaged in the challenged actions, and, therefore, were entitled to absolute immunity and judgment in their favor. Appellees assert the facts here support common pleas' finding that, like the executive director and assistant executive director of an intermediate unit (IU) in *Azar v. Ferrari*, 898 A.2d 55, 60 (Pa. Cmwlth. 2006), Meisinger's role as building principal of the High School with 2,300 students and public-facing duties and responsibilities, is that of a high public official in the community she serves. According to Appellees, whether an individual has policy-making authority is not the sole or determining factor of their status as high public official, *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001), but that determination can also be based on whether the person "is acting in furtherance of some interest of social importance, which is entitled to protection," so as to "protect[ ] the public's right to full disclosure of the facts and conduct of government business," *Appel v. Township of Warwick*, 828 A.2d 469, 474 (Pa. Cmwlth. 2003). Appellees assert the Letter, along with Appellees' other actions, were within the authority and scope of their official duties as high public officials, as they were related to their investigation and the findings of an ongoing issue within the High School and actions taken as a result.[11] (Appellees' Br. at 19-20.) Appellees also argue that Section 8550 of the PSTCA is not at issue in this matter, only the applicability of the "common law high public official absolute immunity" to Appellees, and that Batgos's reliance on *Keeler* is misplaced as that was not a high public official case. (*Id.* at 17 (emphasis omitted).)

---

[11] Appellees also assert, in their counterstatement of questions involved, that Batgos's argument relating to whether common pleas erred in not addressing whether Gusick was acting in the scope of his duties was waived. (Appellees' Br. at 3.) However, this assertion is, itself, waived because it is not addressed in the argument section of Appellees' brief. *See* Pennsylvania Rule of Appellate Procedure 2119(a), Pa.R.A.P. 2119(a); *Tewell v. Unemployment Comp. Bd. of Rev.*, 279 A.3d 644, 654 (Pa. Cmwlth. 2022). Even if Appellees' assertion is not waived, it is without merit as Batgos raised this issue in his Rule 1925(b) Statement.

Batgos replies that Appellees' arguments, if accepted, would "create troubling precedent by expanding the absolute immunity of the high public official doctrine to school principals, which is not supported by the law or by the facts." (Batgos's Reply Br. at 4 (emphasis omitted).) Appellees' reliance on *Azar* and *Durham*, Batgos argues, is misplaced as there are substantial factual differences between an IU and a single, public high school, *Azar*, and assistant district attorneys and a high school principal, *Durham*, which makes the comparisons a "false equivalency." (Batgos's Reply Br. at 5-6.)

## III. DISCUSSION

### A. Legal Principles of the Common Law High Public Official Immunity

Under Pennsylvania common law, high public officials are absolutely immune from suits arising from acts performed in the course of their duties and within the scope of their authority:

> Absolute privilege, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction[.]

*Matson*, 88 A.2d at 895 (emphasis omitted). In *Matson*, our Supreme Court explained the rationale and public policy behind granting immunity to high public officials:

> One's sympathies are almost invariably on the side of the person who is, often with little or no justification, falsely accused. Yet the authorities almost universally hold . . . that statements or acts of high public officials which are made in the course of and within the scope of their official powers or duties give them complete immunity from legal redress. Even though the innocent may sometimes suffer irreparable

11

damage, it has been found to be in the public interest and therefore sounder and wiser public policy to "immunize" public officials, for to permit slander, or libel, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment[-]proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished.

*Id.* at 899-900.

Whether a specific individual is a high public official must be analyzed on a case-by-case basis. "It has been suggested that the determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, an[d] par[]ticularly whether or not he has policy-making functions." *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958) (citations omitted). If an individual is found to be a high public official, the second step of the analysis is that the challenged actions or communications must be made "in the course of the official's duties or powers and within the scope of his authority." *Matson*, 88 A.2d at 895. *See also McKibben v. Schmotzer*, 700 A.2d 484, 490 (Pa. Super. 1997).[12] With these principles in mind, we turn to Batgos's challenges to common pleas' decision.

### B. Immunity of Gusick as a High Public Official

Here, common pleas concluded that Gusick, as superintendent of the School District, is a high public official, a conclusion that Batgos does not challenge. Instead, Batgos argues that a remand is required because common pleas failed to analyze the second part of the immunity test – whether Gusick was acting within the

---

[12] Although not binding, Superior Court decisions may be considered persuasive authority in this Court. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

scope of his authority and in the course of his duties in signing and disseminating the Letter. We disagree.

Initially, we observe that common pleas did not take evidence regarding Gusick's status at the hearing. Instead, common pleas expressly stated that it had already decided, before convening the hearing, that Gusick was entitled to immunity as a high public official. (R.R. at 204a (stating that common pleas "only asked [Meisinger] to come today because [the court] already decided in [his] mind at least and may as well let [the parties] know that [he] decided as a matter of law that [] Gusick as superintendent is necessarily cloaked with the same immunity").) In its written opinion discussing high public official immunity, common pleas specifically acknowledged that such immunity applies only to statements made or actions taken "in the course of the official's duties or powers and within the scope of his authority, or as is sometimes expressed, within his jurisdiction." (*Id.* at 36a (quoting *Matson*, 88 A.2d at 895), 37a (citing *McKibben*, 700 A.2d at 490).) Common pleas then analyzed *Matta*, in which this Court concluded a school board director was acting within the scope of her authority in accusing the school district's business manager of malfeasance in handling a school renovation project. (*Id.* at 37a-38a.) Common pleas contrasted the facts of *Matta* with those of *McKibben*, in which a mayor's comments that the chief of police "lied" about conduct leading to the mayor's private criminal complaint and "has to wash his face in the morning and I hope he likes what he sees" were not related to public matters or the mayor's position and, therefore, were not shielded by high public official immunity. (*Id.* at 38a.) Common pleas reasoned that, unlike the comments at issue in *McKibben*, those in *Matta* "fell within the scope of the [school board director's] duties and authority because the public

13

clearly had the right to be informed of the possible mismanagement . . . of a multi-million[-]dollar school renovation project." (*Id.* at 38a-39a.)

Based on its discussion and comparison of *Matta* and *McKibben*, common pleas concluded that high public official immunity applied here. (*Id.* at 39a.) Although common pleas did not expressly so state, its opinion reflected its implicit conclusion that here, analogously to *Matta*, the public had a right to be informed of the School District's investigation into hazing allegations, which concerned the health and safety of students whom the School District was responsible to protect. (*Id.* at 38a-39a.) Thus, we have little doubt that common pleas' determination as to Gusick was based on its explicit analysis of high public official immunity and its implicit conclusion that Gusick was acting within the scope of his authority as Superintendent of the School District in disseminating the Letter. Further, it is beyond cavil that the dissemination of information concerning the School District's investigation of student safety issues is within the scope of the superintendent's duties and authority. Accordingly, even if common pleas' implicit resolution was error, such error would be harmless. For these reasons, we discern no error in common pleas' conclusion that Gusick was entitled to absolute immunity as a high public official.

### C. Immunity of Meisinger as a High Public Official

Unlike with Gusick, Batgos disputes that Meisinger's position as High School principal qualifies her as a high public official, as common pleas determined. In finding that Meisinger was immune from Batgos's claims as a high public official, common pleas did not analyze, at least expressly, the nature of Meisinger's duties, the importance of her office, or whether Meisinger had policy-making functions. (Rule 1925(a) Opinion at 3-5.) Instead, as discussed above, common pleas set forth

14

and compared the facts in *Matta* and *McKibben*, and then stated that "**[t]he evidence offered at the hearing** clearly demonstrated that [] Meisinger's challenged actions met the requirements for immunity." (*Id.* (emphasis added).) On this basis, common pleas granted Appellees' Renewed Motion "**pursuant to the procedure set out in Rivera** . . . ." (Order (emphasis added).) However, there is inconsistency in common pleas' grant of the Renewed Motion based on evidence presented at the hearing, the intent that this process would "put [Batgos] in good stead to go from there with an appeal," and the reference to the "procedure set out in *Rivera.*" (R.R. at 206a; Order.) This inconsistency may, ultimately, affect this Court's consideration of Batgos's appeal, and, therefore, common pleas' and the parties' intent must be clarified.

The Superior Court, in *Rivera*, recognized that there is a "murky quagmire often created when a pretrial ruling effectively determines the case" and "[t]he laudable goal [in such cases] is to preserve the key legal issue for appellate review while not wasting everyone's time." 832 A.2d at 489. Relevantly, the *Rivera* Court held there are **two** ways for a court of common pleas to enter judgment in pretrial proceedings. The **first** is through the process of **renewing a motion for summary judgment** (for situations **where testimony is <u>not</u> taken**) and the **second** is through the use of a **motion for compulsory nonsuit** (in situations **where testimony <u>is</u> taken**). *Id.* at 488-90.[13] Importantly, if a motion for compulsory nonsuit is granted,

---

[13] A third option would have been, as described in *Molineux v. Reed*, 532 A.2d 792, 793-95 (Pa. 1987), for the parties to agree (or acquiesce) to bifurcate the case and have a bench trial on a particular issue after which the judge resolves the issue on the disputed facts and enters judgment pursuant thereto. In *Molineux*, the defendants filed a motion for summary judgment based on the running of the statute of limitations. The trial court initially declined to dismiss on this basis but, after the parties stipulated that this issue would be decided by the judge alone, held a hearing on that issue, accepting evidence offered by both parties. Thereafter, based on that evidence, the trial **(Footnote continued on next page…)**

written motions for post-trial relief are required to be filed and resolved before the filing of an appeal. *Id.* at 490. In contrast, the grant of a renewed motion for summary judgment requires the filing of no such motions and an immediate appeal may be taken. *Id.*

In *Rivera*, the trial court granted a motion for nonsuit in a matter in which no testimony was taken, the appellants filed a motion to strike the nonsuit, and the appellants waited for that motion to be denied before appealing. The appellee sought to quash the appeal as untimely, having not been filed within 30 days of the trial court's initial order. Upon its review, the Superior Court declined to quash the appeal concluding that the procedure used by the trial court was erroneous because no testimony had been taken, but the court forgave the appellants' appellate missteps. 832 A.2d at 490-91. Instead, the court found that the appellants' following the post-trial process mandated by the erroneous grant of nonsuit before appealing was neither improper nor defeated any of their appeal rights. *Id.* Thus, the appellants in *Rivera* took **more** steps than necessary to perfect their appeal rights.

Here, because Meisinger's testimony **was taken**, the "procedure set out in *Rivera*," (Order), associated with the filing and granting of a renewed motion for summary judgment, and the immediate filing of an appeal therefrom, would have been unavailable, *Rivera*, 832 A.2d at 490. Rather, it would appear that the second

court concluded the limitations period had run, dismissed the action, and entered judgment in favor of the defendants. The plaintiff appealed, arguing the trial court improperly granted summary judgment when there were disputed facts at issue, and the Superior Court agreed. The Supreme Court reversed, holding that summary judgment could not have been granted because the parties agreed to give testimony in open court in an adversarial hearing. Rather, the Supreme Court found the proceedings had been "a full non-jury trial on the statute of limitations issues" and "[t]he trial court's judgment" was "entitled to the same deference on review than any other judgment deserves, which has been entered after a full trial on the merits before a judge." *Molineux*, 532 A.2d at 794-95.

16

procedure set out in *Rivera*, a stipulated trial and compulsory nonsuit followed by seeking post-trial relief and then, the filing of an appeal, was more apt in this matter. While the Superior Court could forgive the procedural missteps in *Rivera*, where all that was required was the timely filing of a notice of appeal, the failure to file the necessary post-trial relief results either in the order being interlocutory as no final judgment was entered, *id.*, or in the waiver of all issues for appellate consideration, *P.S. Hysong v. Lewicki*, 931 A.2d 63, 66 (Pa. Cmwlth. 2007).[14]

If the intent here was for Meisinger's testimony to be considered and relied upon to resolve the outstanding issue of Meisinger's potential immunity as a high public official **and** for Batgos to be "in good stead to go from there with an appeal," (R.R. at 206a), the process used by common pleas, which did not require Batgos to seek post-trial relief, does not appear to be consistent with that intent. Unlike in *Rivera*, where the appellants did more than required to perfect their appeal and preserve their issues for appellate review, the failure to seek post-trial relief where such relief is required has implications on issue preservation for purposes of an appeal. *P.S. Hysong*, 931 A.2d at 66. Alternatively, if the intent was to resolve the issue without the need for additional evidence, i.e., based only on the record as it existed prior to the April 12, 2021 hearing, or as a matter of law, as common pleas did for Gusick, then the renewed motion for summary judgment process referenced in *Rivera* could be used to do so. Whichever process the parties and common pleas intended to follow ultimately affects this Court's consideration of Batgos's appeal, as it could limit the scope of the record to be considered or what issues, if any, have

---

[14] Pursuant to Pennsylvania Rule of Civil Procedure 227.1(c)(2) and (d), post-trial motions from a notice of nonsuit must be filed within 10 days and "shall specify the relief requested and may request relief in the alternative. Separate reasons shall be set forth for each type of relief sought." Pa.R.Civ.P. 227.1(c)(2) and (d).

been preserved for appellate review. Accordingly, we are constrained to vacate common pleas' Order to the extent it granted the Renewed Motion in Meisinger's favor, and we remand for further proceedings to clarify what form of pretrial disposition was intended in the Order and, if necessary, the filing and resolution of post-trial motions.[15]

This remand is necessary because the parties' arguments, which focus on the merits of the high public official immunity issue, imply their desire and that of the

---

[15] Although we are constrained to remand due to this procedural issue, we note that the parties addressed the merits of common pleas' decision finding that Meisinger was entitled to high public official immunity based on Meisinger's testimony. Reviewing those arguments and common pleas' rationale, we are troubled by common pleas' focus on whether "Meisinger's challenged actions met the requirements for immunity," (1925(a) Opinion at 3-5), without determining whether Meisinger was a high public official, which is the **initial** step in determining if high public official immunity applies, *Matson*, 88 A.2d at 895, *Matta*, 721 A.2d at 1165-66, and *McKibben*, 700 A.2d at 488-89. We also observe that neither *Matta* nor *McKibben*, upon which common pleas relied, involved high school principals, but other cases have involved high school principals and found that those principals were **not** entitled to immunity under either the PSTCA or the common law high public official doctrine. *See Lindner*, 677 A.2d at 1196-97 & n.2; *Scott v. Willis*, 543 A.2d 165, 169 (Pa. Cmwlth. 1988); *Keeler*, 533 A.2d at 837; *Byars v. Sch. Dist. of Phila.*, (M.D. Pa., No. 12-121, Aug. 13, 2015), 2015 WL 4876257, * 6 ("Principals and teachers . . . do not qualify as high public officials."); *Wagner v. Tuscarora Sch. Dist.*, (M.D. Pa., No. 1:04-CV-1133, Sept. 21, 2005) 2005 WL 2319141, * 8 ("Unlike school superintendents and school board members, principals and teachers do not qualify as high public officials."); *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (agreeing that high public official immunity applied to individual school board members and school district superintendent and noting that no such immunity had been asserted on behalf of a school principal); *Smith*, 112 F. Supp. 2d at 425 n.6 (holding that a teacher and a high school assistant principal "do not qualify as high public officials for purposes of th[e] common law immunity doctrine"). Further, we note that, of the cases cited by Appellees, two involved situations where the status of the defendant as a high public official was not or could not be disputed, *Azar*, 898 A.2d at 59; *Appel*, 828 A.2d at 471-72, which is not the case here. The third, *Durham*, involved an assistant district attorney who was essential to the performance of district attorneys to fulfill the responsibilities "of their high public offices, to wit, in carrying out the prosecutorial function," 772 A.2d at 70, and if Meisinger's testimony is considered, that testimony reflects that Meisinger's position, while important, is an administrative one that carries out the policies adopted by the School District's duly-elected school board.

trial court to dispose of the case and position it for appeal without further proceedings.[16] However, the parties did not act in a way that clearly demonstrated such an intent. As explained above, if the intent was summary judgment, it could not be granted once evidence was taken; yet the trial court entered judgment. If the intent was to treat the hearing as a bench trial, there had to be a post-trial motion before there could be an appeal; yet no post-trial motion was filed. There is no clear explanation of the trial court's action that can be assumed and will fit what was actually done. That is why a remand is essential to allow the trial court to explain what it intended to do, correct any error made in the attempt to do it, and proceed accordingly.

If the trial court intended to grant summary judgment on the immunity issue, it should explain on remand how it was able to do so without considering the evidence presented at the hearing, particularly in light of its indication on the record that it was relying on that evidence, and given its previous denial of summary judgment on that issue. If, by contrast, the trial court intended to hold a bifurcated proceeding on the immunity issue, which would normally reserve the remaining issues for a jury trial, the trial court should explain how and when the parties expressly stipulated to such a procedure, and then, how and when Batgos waived his previous jury trial demand to allow entry of final judgment without trial, given that no such express stipulation or waiver appears in the record. In that event, proper post-trial procedure will be required in order to preserve any issues for appeal.

---

[16] We acknowledge that the process used was done in an apparent effort to serve "[t]he laudable goal [of] . . . preserv[ing] legal issues for appellate review while not wasting everyone's time, effort, and money by putting on a trial when the result is preordained." *Rivera*, 832 A.2d at 489.

If the trial court does not establish that it correctly proceeded by either of these two means of disposing of the case, further proceedings consistent with this Court's opinion will be needed.

## IV.   CONCLUSION

Because we discern no error or abuse of discretion in common pleas' grant of judgment in favor of Gusick based on his being a high public official and the challenged actions occurred in the course of his duties and scope of his authority, we affirm that portion of common pleas' Order.   However, because there is inconsistency in common pleas' Order as it relates to granting the Renewed Motion for Meisinger and the cited procedure in *Rivera* as set forth *supra*, we vacate the Order as to that determination and remand for further proceedings.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Batgos,                          :
                    Appellant           :
                                        :
        v.                              :   No.  1203 C.D. 2021
                                        :
Elliot Calloway, Sr.,                   :
Richard Gusick and Amy Meisinger        :

# O R D E R

**NOW**, March 15, 2024, the Order of the Court of Common Pleas of Chester County is **AFFIRMED IN PART** and **VACATED IN PART**, and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge